GEORGE E. FERNALD v. THE HIGHLAND HALL
COMPANY *et al.*

AUSTIN S. RANNEY v. THE HIGHLAND HALL
COMPANY *et al.*

#### No. 10760.

1. CONSIDERATION—*for corporation's note and mortgage, held sufficient in particular case.* The surrender of certain notes and securities in which a corporation was interested and which operated as a benefit to it and as a disadvantage to the creditors, is a sufficient consideration to support a promissory note and mortgage given by the corporation upon the authority of a resolution duly passed by the board of directors for that purpose.

2. EVIDENCE EXAMINED—*and held sufficient.* The testimony and findings examined, and held to be sufficient to authorize a judgment in favor of the plaintiff for the amount of the notes sued on, and also foreclosing the mortgage given to secure their payment.

Error from Cowley District Court.   J. A. Burnette, Judge.   Opinion filed July 8, 1898.   *Reversed.*

*J. Mack Love,* for plaintiffs in error.

*Charles L. Brown* and *Fred L. Rosemond,* for defendants in error.

JOHNSTON, J.   This was an action brought by George E. Fernald against the Highland Hall Company to recover upon promissory notes executed by the Company on May 2, 1892 — one for $5000, and another upon which there was a balance due of $117.53 — and also to foreclose a mortgage on real estate, given by the Company to secure the payment of the notes. Other parties, who claimed an interest in the mortgaged property and were connected with the transaction, were made parties. The principal defense of the Highland Hall Company was that no consideration passed to the Highland Hall Company for the notes and mortgage.

Austin S. Ranney also brought an action against the defendants, claiming the legal title to the mortgaged property by virtue of a tax deed; and, after issues were joined, this case was consolidated with the Fernald case, and both were tried together. On the final hearing, the Ranney tax deed was adjudged to be void; and, by agreement of parties, he was given a judgment for the amount of the taxes, which was declared to be a first lien upon the property.

As to the Fernald case, the court found that the notes and mortgage in controversy, which were executed by the Highland Hall Company, were without consideration, and were therefore not valid obligations against it or a lien upon its property. The contention here is that the findings of the court with reference to the consideration of the notes and mortgage are not supported by the testimony, but that upon the evidence produced the court should have found in favor of the plaintiff and have rendered judgment in his favor against the Highland Hall Company. There is but little dispute between the parties on the material facts of the case, and the only substantial controversy is as to whether there was any benefit or valuable consideration given to and received by the Highland Hall Company for the notes and mortgage in suit.

It appears that the Highland Hall Company was organized in 1882, with a capital stock of $10,000. It acquired some real estate in Arkansas City, on which was erected a three-story brick and stone business building. This property was mortgaged for $10,000, which was the full amount of the capital stock of the Company. In March, 1887, the Company sold its entire property to Frank J. Hess, who assumed the payment of the mortgage debt. A warranty deed was executed to him for the property, but subsequently he concluded to acquire the property by another method, namely, the surrender to him of the

entire stock of the corporation. After this was done, the deed formerly executed by the Company was canceled. Afterward, Hess put into the corporation a tract of real estate owned by him, valued at $15,000, and then increased the capital stock of the corporation to $50,000, of which he was the entire owner, except that he placed one share each in the hands of four of his friends, who joined him in voting for the resolution increasing the stock and in organizing the Company. In order to pay off the $10,000 mortgage upon the property, he borrowed that amount from the Union Guaranty Savings Bank of Concord, New Hampshire, and executed his two notes, on May 15, 1888, for $5,000 each, which were indorsed by A. J. Johnson, his father-in-law, as surety. To secure the payment of these notes he delivered to the Bank as collateral security twenty thousand dollars of the stock of the Highland Hall Company. Desiring to change the form of the loan and release Johnson as surety on the notes to the Union Guaranty Savings Bank, negotiations were begun between him and W. F. Thayer, an officer of that Bank, with the result that, in January, 1891, Hess took up one of the five thousand dollar notes, and delivered to Thayer in place of it another note for five thousand dollars, which was executed by one Daniel W. Roberts to Hess and was secured by a mortgage on real estate. For the purpose of taking up the other five thousand dollar note, the Highland Hall Company, on February 23, 1891, executed a promissory note for five thousand dollars and a mortgage on the property of the Company, and the note and mortgage so executed were forwarded to Thayer. The execution of the note and mortgage was expressly authorized by a resolution of the directors of the Highland Hall Company, passed on December 22, 1890.

For some reason, Thayer was unwilling to accept

this note and mortgage in lieu of the one held by him, and did not surrender the note or the capital stock of the Company which was held by the Bank as collateral security.   The note and mortgage so executed, however, were retained by him until a final settlement was made with the Company, when the notes and mortgage in controversy were executed.   On May 2, 1892, in pursuance of a resolution passed by the directors of the Company, the notes and mortgage in controversy were executed, and on the delivery of the same Thayer surrendered the two notes executed May 15, 1888, which were indorsed by Johnson, and also the $20,000 of the capital stock of the Highland Hall Company.   He also surrendered the $5,000 note, and the mortgage given to secure the same, dated February 23, 1891.

We think the surrender of the obligations mentioned and the release of the rights under them constituted a sufficient consideration for the notes in controversy. In view of the fact that the notes executed by Hess in 1888, and for the payment of which the stock of the Company was pledged, were made and delivered to pay an unquestioned debt of the Company, and that the notes and mortgage in controversy were executed to take up and discharge a portion of the same indebtedness, it is difficult to find anything substantial in the claim of want of consideration.   Although Hess signed the notes executed in 1888, it is difficult to distinguish between him and the corporation.   At that time, and long afterward, Hess owned all the capital stock and property of the corporation ; and it will be observed that in giving security for the payment of the notes he used capital stock representing two-fifths of the assets and property of the corporation.

The only object or excuse for the existence of the corporation was the ownership and control of two

pieces of real estate ; but, for some reason, he chose to carry on his private individual business under the cloak of corporate authority. Some courts have held that the ownership by one person of all the stock of a private corporation suspends corporate action, if it does not virtually dissolve the corporation itself. However the purchase and ownership of the entire capital stock of the Highland Hall Company by Hess may have affected or impaired corporate rights or existence, it should not be allowed to defeat a debt contracted in the manner and for the purpose the one which the.Company now seeks to repudiate was contracted. No shuffling or manipulation of the corporate privileges or property by the single stockholder and manager of the corporation should be permitted to defeat the claims of *bona fide* holders of just debts created for and in behalf of the corporation. Under the circumstances, the debt is only an extension of a portion of the original debt which was assumed by Hess when he purchased all the stock and property of the corporation. No mere change in the form of the indebtedness should relieve the corporation from its real liability.

Apart from this view, there was without question a valuable consideration for the notes and mortgage in suit. The note and mortgage executed by the Company in February, 1891, were in the hands of the payee until the debt in controversy was contracted. Although Thayer did not accept them as full payment, or take them as a substitute for the notes and collateral delivered by Hess in 1888, they were apparently held by Thayer as additional security until the settlement was made in May, 1892 ; and this appears to have been without objection or protest by the Company, Hess, or any other officer or stockholder of the Company. Express authority was given for the exe-

cution of the note and mortgage of 1891, and, when that was done, substantially all the capital stock of the Company was in the hands of Hess and his family. During the time the note and mortgage were so held there was apparently complete acquiescence by the Company and by every stockholder in this action of its officer. The surrender of a contract or obligation, which is a real disadvantage to a party, is ordinarily sufficient consideration for a new promise. Under the circumstances, the relinquishment of the note and mortgage referred to, and the release of the rights which accrued under it, were a valuable consideration for the note in suit. In addition to this, there was a surrender of the capital stock of the Company held by the payee of the note surrendered. As has been seen, it constituted two-fifths of the corporate stock and was acquired and pledged by Hess in the manner already stated. There was a by-law of the Company authorizing it to deal in its own stock, by virtue of which some advantage over the Company is claimed; but a general or unlimited power to traffic in its own stock is hardly permissible to a Kansas corporation. While this is true, there are exceptions which permit corporations to purchase or deal in their own stocks in order to protect themselves from loss on debts, or to save themselves from injury or prejudice which might result from placing their stock in the hands of unfriendly persons or of those who might seek to defeat the purposes for which the corporation was formed. In these cases it must appear to be done in good faith and in such a way as not to injuriously affect the rights of creditors. Other reasons for the purchase of its own shares by a corporation might be suggested; and it would appear that the Highland Hall Company might well desire that so large a share as two-fifths of its entire stock should not stand in the hands of a

single creditor.   Apart from the benefit the surrender of the stock may have been to the corporation, it was a disadvantage to the creditor and afforded a valuable consideration for the notes and mortgage in question.

It is to be observed that no stockholder or creditor of the corporation challenges the validity of the debt or the power of the corporation to execute the notes and mortgage in controversy.   The Company sets up a defense to obligations authorized by a resolution of the Company duly passed after having obtained the surrender of other obligations and of the capital stock hereinbefore mentioned.   It seeks to repudiate its indebtedness without offering to restore to the creditor the securities which he formerly held and which he surrendered on the faith of the notes and mortgages in suit.   The testimony and the findings of the court clearly show that the plaintiff was entitled to a recovery on his notes and to a decree foreclosing his mortgage.

The judgment of the District Court will, therefore, be reversed, and the cause remanded with directions to enter judgment in favor of the plaintiff for the amount due upon his notes, and also to enter a decree foreclosing the mortgage, in accordance with the prayer of the plaintiff's petition.